UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------

DONALD POST,

                  Plaintiff,

        v.

ANAPLAN, INC., FRANK CALDERONI,
DAVID CONTE, SANDESH PATNAM,
SUSAN L. BOSTROM, ROBERT E.
BEAUCHAMP, SURESH VASUDEVAN,
YVONNE WASSENAAR, ALLAN
LEINWAND, and BROOKE MAJOR-REID.

                Defendants.

Case No. 1:22-cv-03541

**COMPLAINT FOR VIOLATIONS OF
SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT
OF 1934**

**<u>JURY TRIAL DEMANDED</u>**

        Plaintiff Donald Post ("Plaintiff"), by his undersigned attorneys, alleges as follows based (i) upon personal knowledge with respect to himself and his own acts, and (ii) upon information and belief as to all other matters based on the investigation conducted by his attorneys, which included, among other things, a review of relevant U.S. Securities and Exchange Commission ("SEC") filings, and other publicly available information.

<u>**NATURE OF THE ACTION**</u>

        1.     This action is brought by Plaintiff against Anaplan, Inc. ("Anaplan" or the "Company") and the members of the Company's Board ("Board") for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78n(a) and § 78t(a), and Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9(a) ("Rule 14a-9"). Plaintiff's claims arise in connection with the solicitation of public stockholders of Anaplan ("Anaplan Stockholders") to, *inter alia*, vote in favor of a

merger transaction ("Merger") pursuant to which Anaplan will merge into and survive as a wholly-owned subsidiary of an affiliate of Thoma Bravo LLC ("Thoma Bravo"), in exchange for payment of $66.00 per share in cash by Thoma Bravo to Anaplan Stockholders.

2.    On March 20, 2022, Anaplan announced that the Board had approved the sale of the Company to Thoma Bravo for $66.00 per share in cash ("Merger Consideration"), pursuant to a merger agreement ("Merger Agreement").

3.    On April 21, 2022, Defendants authorized the filing of a false and misleading preliminary proxy on Schedule 14A ("Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, with the aim of soliciting Anaplan Stockholders to vote for the Merger and certain related proposals.

4.    The Proxy contains material misrepresentations, and material omissions that render statements misleading, including but not limited to failing to disclose the full extent of the prior relationships between Anaplan's financial advisor on the Merger—Goldman Sachs & Co. LLC ("Goldman Sachs")—and Thoma Bravo. These and other material misrepresentations and omissions render the Proxy false and misleading in violation of the above-referenced Exchange Act provisions and Rule 14a-9.

5.    The Proxy advises that a special meeting of Anaplan Stockholders will be held to vote on the Merger and certain related proposals ("Stockholder Vote"). The violations referenced above must be cured in advance of the Stockholder Vote to enable Anaplan Stockholders to cast informed votes with respect to the Merger and related proposals. Therefore, Plaintiff seeks to enjoin the Defendant from taking any further steps to consummate the Merger and schedule the Stockholder Vote, until such violations are cured. Alternatively, if the Merger is consummated, Plaintiff reserves the right to recover damages suffered by himself and similarly-situated investors

as a result of such violations.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7.      This Court has personal jurisdiction over each of the Defendants because each defendant has sufficient minimum contacts with the United States so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. *See Moon Joo Yu v. Premiere Power LLC*, No. 14 CIV. 7588 KPF, 2015 WL 4629495, at *5 (S.D.N.Y. Aug. 4, 2015) (because Exchange Act provides for nationwide service of process, and Defendant resides within the United States, and conducts business within the United States, he should reasonably anticipate being haled into court in the United States, and Court's exercise of personal jurisdiction over Defendant with respect to Plaintiffs' securities fraud claim is proper); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MDL 2262 NRB, 2015 WL 6243526, at *23 (S.D.N.Y. Oct. 20, 2015) ("[w]hen the jurisdictional issue flows from a federal statutory grant that authorizes suit under federal-question jurisdiction and nationwide service of process . . . Second Circuit has consistently held that the minimum-contacts test in such circumstances looks to contacts with the entire United States rather than with the forum state.").

8.      Venue is proper under 28 U.S.C. § 1391(b) because Defendants transact business in this District. In particular, the Company's common stock trades under the ticker "PLAN" on the NYSE, which is headquartered in this District, and the false and misleading Proxy was filed with the SEC, which has a regional office in this District. *See Mariash v. Morrill*, 496 F.2d 1138, 1144 (2d Cir. 1974) (venue appropriate in the Southern District of New York where an act or transaction

3

constituting the alleged violation occurred in the Southern District of New York); *United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (venue in tender offer fraud prosecution appropriate in District).

## PARTIES

9.      Plaintiff is, and has been at all relevant times, a continuous stockholder of Anaplan common stock.

10.     Defendant Anaplan is a Delaware corporation with its principal executive offices located at 50 Hawthorne Street, San Francisco, CA 94105.

11.     Defendant Frank Calderoni ("Calderoni") is the Chairman of the Board and Chief Executive Officer of Anaplan. Calderoni is the largest individual shareholder of the Company with a 2.4% stake.

12.     Defendant David Conte ("Conte") has served as a member of the Board at all relevant times

13.     Defendant Sandesh Patnam ("Patnam") has served as a member of the Board at all relevant times.

14.     Defendant Susan L. Bostrom ("Bostrom") has served as a member of the Board at all relevant times

15.     Defendant Robert E. Beauchamp ("Beauchamp") has served as a member of the Board at all relevant times.

16.     Defendant Suresh Vasudevan ("Vasudevan") has served as a member of the Board at all relevant times.

17.     Defendant Yvonne Wassenaar ("Wassenaar") has served as a member of the Board at all relevant times.

4

18.     Defendant Allan Leinwand ("Leinwand") has served as a member of the Board at all relevant times.

19.     Defendant Brooke Major-Reid ("Major-Reid") has served as a member of the Board at all relevant times.

20.     Defendants identified in paragraphs 11 to 19 are collectively referred to herein as the "Individual Defendants," and together with Anaplan, collectively, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Anaplan's Business

21.     Anaplan is a market-leading cloud-based enterprise SaaS company that provides business planning software for customers to model what-if scenarios, contextualize current performance in real time, and forecast future outcomes.

### Background to the Merger

22.     In December 2021, several private equity firms, including Thoma Bravo, reached out to representatives of Anaplan concerning potential transactions.

23.     On December 16, 2021, Anaplan received a letter from Corvex Management, L.P ("Corvex"), an activist investor, encouraging Anaplan to evaluate a sale of Anaplan. Subsequently, another activist investor, Sachem Head Capital Management, L.P., teamed up with Corvex to request seats on the Board.

24.     On December 20, 2021, the Board formed an Advisory Committee—consisting of Defendants Beauchamp, Patnam and Vasudevan—to manage interactions with activist investors and evaluate potential strategic transactions.

25.     Anaplan retained Goldman Sachs and Qatalyst Partners ("Qatalyst") to serve as financial advisors with respect to consideration of strategic transactions. Subsequently, Goldman

Sachs and Qatalyst were intimately involved in reaching out and presenting to potential acquirers, evaluating acquisition proposals, and negotiating the Merger with Thoma Bravo. Both firms provided relationships disclosures purporting to fully disclose potential conflicts of interest with respect to potential acquirers.

26.      On March 8, 2022, Thoma Bravo submitted an initial bid of $63.00 per share in cash. Thoma Bravo later raised its bid to $66.00 per share in cash. Thereafter, representatives and advisors of Anaplan and Thoma Bravo negotiated the Merger Agreement.

27.      On March 20, 2022, Goldman Sachs provided an oral fairness opinion to the Board (later confirmed in writing) that the Merger Consideration was fair, from a financial point of view, to Anaplan Shareholders. Qatalyst also provided an oral and written fairness opinion to the Board (together with the Goldman Sachs's fairness opinion, the "Fairness Opinions").

28.      The Merger Agreement was executed on March 20, 2022. That same day, Anaplan and Thoma Bravo announced the Merger.

**Receipt of Different Consideration by Officers and Directors**

29.      The Proxy acknowledges that certain of Anaplan's directors and executive officers may have financial interests in the Merger "that may be different from or in addition to" the interests of public Anaplan Stockholders, and purports to identify those differing and additional interests.

30.      First, the Proxy discloses that Anaplan's executive officers are expected to continue in their current positions following the Merger and receive continued benefits under their respective employment agreements with Anaplan.

31.      Second, the Proxy discloses that the Individual Defendants stand to earn hundreds of millions of dollars in cash from the Merger—including over $237 million in cash to be paid to

Defendant Calderoni and over $138 million in cash to be paid to Defendant Patnam—as per the following table in the Proxy showing the amount of cash that Anaplan's directors and executive officers can expect to receive for their Anaplan common stock, and from acceleration of their options and restricted stock units in connection with the Merger:

| Name | Shares Held (#) | Shares Held ($) | Options Held (#)(1) | Options Held ($) | Restricted stock units Held (#) (2) | Restricted stock units Held ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Frank Calderoni | 1,134,351 (3) | 73,971,029 | 2,576,991 | 141,159,598 | 339,075 | 22,111,081 | 237,241,708 |
| Vikas Mehta | 39,427 | 2,571,035 | 0 | 0 | 238,381 | 15,544,825 | 18,115,860 |
| Ana Pinczuk | 54,867 | 3,577,877 | 174,746 | 4,670,577 | 204,708 | 13,349,009 | 21,597,462 |
| William Schuh | 21,690 | 1,414,405 | 0 | 0 | 202,688 | 13,217,284 | 14,631,689 |
| David H. Morton, Jr. | 1,212(4) | 79,035 | 0 | 0 | 0 | 0 | 79,035 |
| Vivie Lee | 1,173(5) | 76,491 | 0 | 0 | 0 | 0 | 76,491 |
| Robert E. Beauchamp | 55,567 | 3,623,524 | 137,770 | 7,531,957 | 3,537 | 230,648 | 11,386,128 |
| Susan L. Bostrom | 8,567 | 558,654 | 147,770 | 8,649,707 | 3,537 | 230,648 | 9,439,008 |
| David Conte | 258,567 | 16,861,154 | 2,770 | 57,007 | 3,537 | 230,648 | 17,148,808 |
| Allan Leinwand | 5,557 | 362,372 | 594 | 4,229 | 3,537 | 230,648 | 597,249 |
| Brooke Major-Reid | 1,676 | 109,292 | 0 | 0 | 3,537 | 230,648 | 339,940 |
| Sandesh Patnam | 2,122,687 (6) | 138,420,419 | 2,770 | 57,007 | 3,537 | 230,648 | 138,708,074 |
| Suresh Vasudevan | 8,757 | 571,044 | 2,974 | 63,029 | 3,537 | 230,648 | 864,720 |
| Yvonne Wassenaar | 6,480 | 422,561 | 1,342 | 22,022 | 3,537 | 230,648 | 675,231 |

## The Proxy Contains Material Misrepresentations and Omissions

32.     Defendants disseminated a false and misleading Proxy to Anaplan Stockholders that misrepresents or omits material information that is necessary for Anaplan Stockholders to cast informed votes with respect to the Merger.

### *Material Omissions Concerning Prior Relationships Between Goldman Sachs and Thoma Bravo*

33.     Concerning any prior relationships between Goldman Sachs and Thoma Bravo and its affiliates, the Proxy makes the following disclosure:

> Goldman Sachs has also provided certain financial advisory and/or underwriting services to Thoma Bravo and/or its affiliates and portfolio companies from time to time for which its Investment Banking Division has received, and may receive, compensation, including having acted as bookrunner with respect to the initial public offering of McAfee Corp. ("McAfee"), a portfolio company of Thoma Bravo, of 23,000,000 shares of its Class A common stock in October 2020; *as financial advisor to Thoma Bravo with respect to its acquisition of RealPage, Inc. in April 2021*; as bookrunner with respect to the initial public offering by Thoma Bravo Advantage, an affiliate of Thoma Bravo, of 100,000,000 units in January

2021; as financial advisor to McAfee in the sale of certain assets of its enterprise business in March 2021; *as financial advisor to Thoma Bravo, with respect to its acquisition of Proofpoint, Inc. in August 2021*; and as financial advisor to McAfee with respect to its sale in March 2022. During the two year period ended March 10, 2022, Goldman Sachs has recognized compensation for financial advisory and/or underwriting services provided by its Investment Banking Division to Thoma Bravo and/or its affiliates and portfolio companies of approximately $175 million.

34.     The statement above is materially false and misleading in several respects. First, Goldman Sachs did not merely serve as "financial advisor" to Thoma Bravo in connection with Thoma Bravo's acquisition of RealPage, Inc. Instead, a Goldman Sachs banking affiliate— Goldman Sachs Bank USA ("Goldman Sachs Bank")—also led and contributed to the $4 billion in debt financing used to fund the $10.2 billion acquisition. The fact that Goldman Sachs and Goldman Bank are technically not the same entity is irrelevant. *See Vento v. Curry*, No. CV 2017-0157-AGB, 2017 WL 1076725, at *3 (Del. Ch. Mar. 22, 2017) ("that MSSF is a separate entity from Morgan Stanley does not change the reality that they are affiliates and that the financing fees MSSF stands to receive in connection with the transaction create a potential conflict of interest for Morgan Stanley.").

35.     Second, Goldman Sachs did not merely serve as "financial advisor" to Thoma Bravo in connection with Thoma Bravo's acquisition of Proofpoint, Inc. Instead, Goldman Sachs Bank also led and contributed to the debt financing used to fund the $12.3 billion acquisition.

36.     Third, on January 11, 2022, project44, the leading supply chain visibility platform, announced that it received an investment totaling $420 million from a syndicate led by Thoma Bravo, TPG and Goldman Sachs Asset Management.

37.     Based on the foregoing, the Proxy fails to fully and fairly disclose the full extent of the prior business relationships between Goldman Sachs and Thoma Bravo.

38.     Information that bears on whether a financial advisor faces conflicts of interest is material to stockholders when deciding how to vote on a merger. *Vento*, 2017 WL 1076725, at *2 ("Because of the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, this Court has required full disclosure of investment banker compensation and potential conflicts."). Here, because (i) Goldman Sachs played a highly active role in negotiating the Merger with Thoma Bravo, and (ii) the Board's decision to approve the Merger and to recommend that Anaplan Stockholders vote to approve the Merger was based in part on the fairness opinion provided by Goldman Sachs, any conflicts Goldman Sachs had that might have (i) predisposed it to favor Thoma Bravo in some manner, and (ii) prevented it from providing unbiased advice to the Board concerning the fairness of the Merger Consideration, would be material to the decision of Anaplan Stockholders of whether to vote in favor of the Merger.

39.     To help them determine whether to vote in favor of the Merger, Anaplan Stockholders are entitled to full and fair disclosure concerning all prior material business relationships between Goldman Sachs and Thoma Bravo.

### *The Fairness Opinions Are False and Misleading*

40.     The Fairness Opinions included in the Proxy improperly fail to disclose certain key inputs and assumptions underlying the analyses on which they were based, which renders them false and misleading. Without this information, as described below, Anaplan Stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the Fairness Opinions in determining whether to vote for the Merger. This omitted information, if disclosed, would significantly alter the total mix of information

41.     With respect to Goldman Sachs's *Discounted Cash Flow Analysis*, the Proxy fails to adequately disclose how Goldman Sachs determined that a discount rate range of 11.00% to 13.00% was appropriate. The explanation that the discount rate range reflects "estimates of Anaplan's weighted average cost of capital" is insufficient since it does not disclose the risk free rate, U.S. equity premium, and beta adjustments that Goldman Sachs used to derive that range.

42.     Likewise, with respect to Qatalyst's *Discounted Cash Flow Analysis*, the Proxy fails to adequately disclose how Qatalyst determined that a discount rate range of 11.50% to 15.00% was appropriate. The explanation that the discount rate range reflects "estimated weighted average cost of capital for Anaplan" is insufficient since it does not disclose the risk free rate, U.S. equity premium, and beta adjustments that Qatalyst used to derive that range.

43.     If the discount rate ranges used by Goldman Sachs and Qatalyst are artificially high it would have depressed the value range generated for Anaplan's shares. *See In re Topps Co. S'holders Litig.*, 926 A.2d 58, 76 (Del. Ch. 2007) (raising discount rates drives down the resulting value range). As such, Anaplan Stockholders are entitled to further disclosure concerning the inputs Goldman Sachs and Qatalyst used to derive their discount rate ranges. *See Topps*, 926 A.2d at 76 (subjective judgments regarding discount rates are not scientific, "but highly-paid valuation advisors should be able to rationally explain them."). Such information is material since a discounted cash flow analysis is "arguably the most important valuation metric." *Laborers Loc. 235 Benefit Funds v. Starent Networks, Corp.*, No. CIV.A. 5002-CC, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009).

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants
### for Violations of Section 14(a) of the Exchange Act and Rule 14a-9

44.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein.

45.     SEC Rule 14a-9, 17 C.F.R. §240.14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides:

> No solicitation subject to this regulation shall be made by means of any Proxy, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

46.     Defendants disseminated the false and misleading Proxy, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

47.     By virtue of their positions within the Company, and/or roles in the process of preparing, reviewing, and/or disseminating the Proxy, Defendants were aware of their duty not to make false and misleading statements in the Proxy, and not to omit material facts from the Proxy necessary to make statements made therein—in light of the circumstances under which they were made—not misleading.

48.     Yet, as specified in paragraphs 32-43 above, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, Defendants (i) made untrue statements of material fact in the Proxy,

and (ii) omitted material facts from the Proxy necessary to make statements therein— in light of the circumstances under which they were made—not misleading, in order to induce Anaplan Stockholders to vote in favor of the Merger and related proposals. Defendants were at least negligent in filing the Proxy with these material misrepresentations and omissions.

49.     The material misrepresentations and omissions in the Proxy specified above are material insofar as there is a substantial likelihood that a reasonable Anaplan Stockholder would consider them important in deciding whether to vote in favor of the Merger and related proposals. In addition, a reasonable Anaplan Stockholder would view disclosures of the omitted facts specified above as significantly altering the "total mix" of information made available to Anaplan Stockholders.

50.     Because of the material misrepresentations and omissions in the Proxy specified above, Plaintiff and other Anaplan Stockholders are threatened with irreparable harm insofar as Plaintiff and other Anaplan Stockholders will be deprived of their entitlement to cast fully informed votes with respect to the Merger and related proposals if such material misrepresentations and omissions are not corrected before the Stockholder Vote. Therefore, injunctive relief is appropriate.

## COUNT II

**Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act**

51.     Plaintiff incorporates and repeats each and every allegation above as if fully set forth herein

52.     The Individual Defendants acted as controlling persons of Anaplan within the meaning of Section 20(a) of the Exchange Act, as alleged herein.  By virtue of their positions as officers and/or directors of Anaplan, and participation in, and/or awareness of Anaplan's

operations, and/or intimate knowledge of the contents of the Proxy filed with the SEC, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of Anaplan with respect to the Proxy, including the content and dissemination of the various statements in the Proxy that Plaintiff contends are materially false and misleading, and the omission of material facts specified above.

53.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.    Each of the Individual Defendants had direct and supervisory involvement in the negotiation of the Merger, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised same. In particular, the Proxy at issue references the unanimous recommendation of the Board to approve the Merger, and recommend that Anaplan Stockholders vote for the Merger. The Individual Defendants were thus directly involved in the making of the Proxy.

55.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered in connection with such negotiation, review and approval. The Individual Defendants thus directly participated in the drafting of the Proxy.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control

13

over and did control a person or persons who have each violated Section 14(a), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict, and can Plaintiff and other Anaplan Stockholders cast fully informed votes with respect to the Merger.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, employees and all other agents and persons acting in concert with them from proceeding with and holding the Stockholder Vote and consummating the Merger, unless and until Defendants disclose and disseminate to Anaplan Stockholders the material information specified above that has been omitted from the Proxy, and correct any false and misleading statements in the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the transactions contemplated thereby, or granting Plaintiff rescissory damages;

C.     Directing Defendants to account to Plaintiff for all damages suffered as a result of their misconduct;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 2, 2022

**WOHL & FRUCHTER LLP**

By:/s *Joshua E. Fruchter*
Joshua E. Fruchter (JF2970)
25 Robert Pitt Drive, Suite 209G
Monsey, NY 10952
Tel: (845) 290-6818
Fax: (718) 504-3773
Email: jfruchter@wohlfruchter.com

*Attorneys for Plaintiff*

15